May it please the Court, James Siegel on behalf of Fred Meyer. I'd like to reserve three minutes of my time for rebuttal. Sure. In 2018, Oregon amended its bottle bill. Based on agency guidance, Fred Meyer collected 10-cent deposits on a number of new containers, then passed along what he collected to the relevant state authorities. Fred Meyer also made sure to refund the deposits of any customer who sought to return any container. Well, I think we have that point is contested, right? It is contested on appeal. I believe the evidence was unrebutted below that. What Exhibit 6? Excuse me, Your Honor. Oh, sure. I wasn't trying, again, not a trick question. No, no, no. I just don't know the exhibit numbers from the district. And so that I have this stuff. It's Exhibit Number 6, and I think it's a point well taken. It's an email, one of the emails from Becky Bogle, and the last line in it suggests that customers, oh, yeah, here we go. It's March 2018, and it suggests that customers who had tried to get refunds, the last line is, this suggests that Fred Meyer's not only charging the 10 cents, but the grocer, yeah, the grocer's not only charging the 10-cent deposit on non-eligible items, but also refusing to refund the customer for the deposit charged. That's in our record. I see that, Your Honor. Yeah, so there were, there were a sort of a handful of anecdotal examples. I think there were roughly 20 in total. There's also an allegation in the complaint. So how do we get to, I think you're, I think you opened with this was uncontested. Well, it's uncontested that refunds were provided. So there was over a thousand refunds provided. Well, some, but, okay. Well, yes, and the question is whether the class members who received those refunds have Article 3 standing. What about the ones who didn't? You need, they need a class member, the class representative has to have received, be able to allege Article 3 injury and does here, it seems to me. Well, Your Honor, we can test that. But I think that your point, I think that the easier answer to your point is with respect to those unnamed class members who sought and received refunds. So those class members are the ones who lack standing. Doesn't this all bake in, if that's your argument, doesn't it all bake into a predominance inquiry? Well, there are two separate issues here. So one is the predominance issue. And yes, it does bake into the predominance issue, we think, under this Court's decision. So what's your best standing argument then? Our best standing argument is that the, the injury the plaintiffs alleged in their complaint was that the, the containers they purchased were diminished in value by 10 cents. And so what the district court said was that because they had suffered that 10 cent injury at the time of sale, that was enough to establish injury class Y. That's wrong. I think that there's, there's a soundbite in the district court's order that sort of flirts with that idea. But I don't think that's what the district court relied on. Your Honor, that's, that's how I read the district court's decision. And regardless, the district court didn't address the actual pertinent Article 3 question, which is whether the class members had standing at the time of suit. Because that's actually the relevant question under Article 3. Well, but can I, can I, let's break this down into parts. There are named plaintiffs who say they never got a refund, correct? That's right, and they never tried to seek a refund. Okay, but just, you can add the additional facts later, just try to respond to what I've asked. And why don't they have Article 3 standing? Now you can which is they could have sought and received a refund. Did they know of that available remedy? Your Honor, it was widely advertised. That's evidence in the record. They, they, they claim that they weren't aware that they could return them. I think the record shows that I Can Make It Right program had been widely advertised years earlier and then had gone, had morphed into an internal policy. And I think the record is, is, is quite contrary. Certainly the district court made a finding that it was not widely advertised here. I read the district court's decision to focus instead on whether it was widely advertised specifically with respect to this bottle bill issue. So essentially what the district court said was the fact that you had a Make It Right program providing that you could give refunds to anyone for any product, no questions asked, that's not enough. What you needed to do was go out and say, we will give you a refund for any improperly charged bottle bill deposits. The case law that you're relying upon, and I just want to judge her with this question, the case law you're relying upon are, it seems to be readily distinguishable. Those, in those fact patterns, they were broad recall campaigns, broadly advertised. What's your, is your best shot the I Can Make It Right program? Yes, Your Honor. In terms of the wide advertising, and, and it's, I think the, the Bandler case from the Second Circuit is, is probably the most factually on point, where it was just the general availability of court procedures that allowed you to recover your costs that the court said deprived the plaintiff there of Article III standing. Regardless, I'll acknowledge that the sort of the, the standing inquiry with respect to the named plaintiffs is more challenging. It's with respect to the unnamed plaintiffs who did in fact receive refunds that I think there, there is a, a much stronger Article III argument, and one that plaintiffs have not overcome. And so, let me ask again about that. I'm sorry, because that was, I think everybody agrees that somebody who got a refund can't get another one, and they don't have one, and I don't think the other side is pushing back on the notion that those people who got refunds don't have Article III standing. What I'm trying to figure out is what the consequence of that is. If the named plaintiffs have Article III standing, put aside your refund program, then the suit can, the suit can proceed at that, at that level. Your second argument seems to be, well, there may be some class members who got refunds, and that defeats predominance. Is that your second argument? Uh, yes, Your Honor. It both defeats predominance and is an independent issue under Article III. Well, that's the, thank you, because it's that second one I wanted to get to. Um, what case do you rely on for the proposition that Article III standing of the class, Article III standing in the lawsuit, is defeated if some class member doesn't have Article III standing? Uh, Your Honor, I think the Healy case was just court recently. So, let me ask you about that, because Healy talks about whether or not there's Article III standing at a later stage, and I, and, and at summary judgment, but you're arguing that there needs to be Article III standing at class certification. Yes, Your Honor, and I, and I think the. So, what case do you rely on for that proposition? Well, there's no case in this circuit. The circuit has expressly held that question open. I think the Second Circuit and the Eighth Circuit and the Halverson case have both held that every class member does need to have standing at class certification, but I, I acknowledge that this circuit hasn't directly addressed that, but the Healy case sort of gets you 95% of the way there, and so what the Healy case held was that in TransUnion, the Supreme Court made clear that every class member has to establish standing at trial, and so that, that already forecloses the other side's argument, which is that, oh, this can be. It says after class certification. Healy says TransUnion compels unnamed class members to demonstrate evidence of standing here after class certification, but prior to trial at summary judgment. Absolutely, and I'm not, I don't mean to say that Healy itself held that it needs to be established at class certification. My point is simply that the logic of Healy. Healy says we have consistently held that Article III's requirements are satisfied before a class is certified as long as at least one named plaintiff has standing. Absolutely, Your Honor, and again, we don't, we don't contest that either, so I, I think it just, take things in stages. At the, at the motion to dismiss stage, it could be under either, you know, a, a failure to plead standing or failure to prove standing if the, the defendant puts that at issue. It's, it's clear that only the named plaintiff needs to have standing. That's because the unnamed class members aren't yet a part of the case in any sense. It's also clear after class certification, after Healy, that once the class is certified, that all of those unnamed class members have to establish their standing. So the question is... Go ahead, I'm sorry. The question is what, what happens at class certification? And our position, I, I think this is consistent with the logic of Healy, is class certification is the point at which all those unnamed class members become parties to the litigation. We have never held that. Your Honor, the, the, the Supreme Court has held in, in Devlin and other cases that, that the, that there are significant consequences to the class being certified. I think that's also what Healy... Well, of course, absolutely, we take it seriously. And it seems like, you know, when I looked at your briefing, especially after Healy, which I think is not a case that cuts in your favor, but I appreciate that you're, and I, I mean that not as a, I don't mean to be flip, that, that you read it differently, but it seems to me that it's really a tough case for you. You know, I thought that the TransUnion leaves this open. It looked like they were going to take it up in Davis, but of course that was dismissed as improvidently granted. So at this point, the circuit in the law, in this circuit, it seems to me to be very tough for you. What's your, we're belaboring this point, but what's your very best shot at this? Well, Your Honor, I think the law in the circuit expressly leaves it open. So both in O'Lean and in Vann, the court made clear that it wasn't resolving that question. It only addressed the, the predominance question. It does talk about predominance. That's why I started about five minutes ago. So it doesn't, for you, in this case, doesn't this bake into predominance? No, I do think it's an independent basis for reversal. Again, this court doesn't necessarily need to address any of these issues because the each class member had standing at the point of sale. And so it didn't really address any of those issues at all. I don't read the district court order to be that cut and dried that the district court said, because there was injury at the time of sale that, you know, that it's all, all done. I think I agree with Judge Hurwitz and I don't hear the plaintiffs arguing this. Even if there was injury at the time of sale, if those folks had been refunded and could not show article three injury, this would be a very different case. I don't, I don't hear them pushing back on that. Well, Your Honor, I believe they, I mean, at least a thousand refunds were provided that, that, that does undercut the standing. That's why we get to, that's why we get to 23B3, right? Very well, Your Honor. But I, but I believe the district court didn't address that predominance inquiry. And that's the basis for the, the need for a remand because the district court didn't say, okay, is there a viable way to determine which class members were injured and which class members were not? It said that inquiry is unnecessary because everyone was injured at the time of sale. But if it's accepted, and I. Well, it's an on-off switch. This is a little bit unique because it's an on-off switch. It's, it's, it's essentially an identified price premium of 10 cents. They either incurred it or didn't incur it, right? They either sort of did or didn't, as opposed to any kind of a graduated analysis. And, and if it's just a question of whether or not they purchased the product, whether they got the refund, that on-off switch kind of analysis is one that we see in consumer cases all the time. Well, Your Honor, in the Vann 2 case, it was, is a similar sort of inquiry that was necessary because, again, it was, it was, there were a number of refunds provided. And the question was whether those refunds were sufficient to also cover the lost time value of money. And this court held that the mere fact that there was examples of 18 refunds, which would have covered the, that Article 3 injury that were given before the suit was filed, that was enough to require remand. It could preclude predominance. So I was on Vann. I'm sure you're aware of that. I'm aware, Your Honor, yes. And you're really short-handing it there. There was a lot more going on in Vann, right? There was a lot more going on. And so I think this is a tougher, much tougher case for you. Well, Your Honor, and I'd just reiterate, that's the plaintiff's burden to show both predominance and standing. Right, and it's abusive discretion standard here. And I don't know how this is in any way comparable to Vann. Before we go on, and I just cut off to Desai, I'm mindful of that, but can you give me your run at Vann again? Yes, Your Honor. So the issue in Vann was the... I know the issue. I was on the case. And you know that I was on the case. So what's your best read of it for your client? My best read of it is that when a defendant puts on evidence that there's a specter of individualized determinations that might preclude predominance, the plaintiff has to respond to that with evidence. Any time? Once, yes, once the defendant makes a showing. We made that showing here, both by showing that we had provided refunds, over a thousand refunds, which would eliminate the Article 3 injury that the plaintiffs had have alleged, and by showing that many of those refunds were for the full purchase price of the product, which addresses the sort of the lost time. You started by saying, in this case, I think by saying you couldn't, that Fred Meyer didn't have that data at all, and then came back with, I think, $1,275, and that's never explained. But you're, I still think you're seriously misreading Vann, and I'm taking up too much of your time. So let's get to Judge Desai's question. I just have a question, and it's related to this discussion that we're having. Let's just assume that I agree with you that the district court was wrong in concluding that there were no uninjured class members. I'm not really following your argument as to why that somehow requires a remand in this case, because, and I hear what you're saying, which is we don't have a case in the circuit that makes clear that there can be uninjured members in the class at the time of class certification. But we know that at this stage, if the named plaintiffs have standing, that's enough. So are you just asking us to make that clear? And if we need to make that point clear, you know, do you think we should do that in a published opinion so that there is law of the circuit that indicates that there can be uninjured members of the class? Your Honor, so just to take the first part of your question first, if the district court got it wrong in hoping that there were no uninjured class members, that requires a remand, because, again, that changes the entire predominance inquiry. So the district court never engaged the predominance inquiry that would be required if there are, in fact, uninjured class members. Well, let's assume that it's likely there are some uninjured class members. That's rule 23B, right? There has to be a predominance decision. Yes, Your Honor, and that decision wasn't reached here, and the plaintiffs didn't put in any evidence that would establish that there was a viable way to determine at trial which plaintiffs members of the class were, in fact, injured and which were not. Do you want to reserve time? Yes, thank you, Your Honor. You bet. May it please the Court, Kelly Jones appearing for plaintiffs, appellees, and now certified class members. So, Your Honor, it was already discussed here what we're here for. We're talking about Article III injury, injury in fact, which is concrete, and we know from TransUnion, as we've already discussed, what we have here is monetary injury. It's a traditional, classic, tangible injury that's been reaffirmed by the Supreme Court. That's not his argument. He's not denying that. Correct, Your Honor, and so skipping to that, the plaintiffs here, they have that concrete injury, and in fact, all class members, even the ones that we'll get to in a minute, and I think this addresses Judge Hurwitz's question earlier, even the class members that may have received refunds also have concrete monetary injury that has not been fully reimbursed. Well, let's stop there because let's assume I don't buy your argument that loss of the time value of 10 cents establishes a concrete injury. If I don't buy that argument, you do have class members who didn't suffer a concrete injury, correct? If I understand the question correctly, if you don't buy the lost time value of money, then yes. Put aside the Article 3 issues because I think it's pretty clear under our case law, the fact that you have people named plaintiffs who did suffer an injury and the fact that there may be class members who didn't suffer it doesn't necessarily prevent certification. I want to get to the last issue your friend was addressing. When we get to actual liability, and again, assume I don't buy the time value of money argument, how do we determine who was injured and who wasn't? Your Honor, so in many of these class actions, I think we cite Brezeno v. ConAgra decision, and so in that case particularly, the court was dealing with that there's no ascertainability, you know, requirement in Rule 23. In consumer class action, especially when there's a lot of cases where there's cash transactions, etc., then there has to be a claims process. This is one of those cases where there's going to have to be a process. Your argument is that it doesn't prevent class certification. So you would agree with Judge Hurwitz that if he doesn't buy or this panel does not buy the argument that the time value of money is an injury and so that there are some uninjured members of the class, the question I think that I would like to hear an answer to is does that prevent class certification? No. Does it bear on predominance though? And that's what I guess my, that's what the other side is arguing. It may not categorically prevent class certification, but if there have to be individual determinations for thousands of members of a class, does that mean that we don't have a predominance requirement is not met? Your Honor, if that were the case where we had to have thousands of determinations and individualized questions to determine whether somebody was injured, then I'd say that could defeat predominance. That's not the case here as the district court correctly found. And I think, again, going back to the longstanding precedent and which, which we see in the Healy case is quite fantastic. It's the opposite of, frankly, of what Fred Meyer says it does. And I think Judge Christen, you read quotes from there. I have the other quotes. There's more than that in there to show exactly that, that, that says transunion and Healy transunion didn't upset that. That only the class, the class plaintiffs, one class plaintiff has to prove they have standing in order for certification. And that's just. Well, in this circuit now, and, and as I said, you know, I don't know. I thought we were going to get an answer out of Davis about injury here. We don't have that now. So I'll grant you that. I think that's the controlling law now, but could you go back to predominance, which is what Judge Herbert is asking about. And so, and I was trying to get there maybe a little slowly. And so there's two ways that Fred Meyer attacks it. One, we've already dealt with this just, oh, article three says that, that plaintiffs have to prove absent class member standing at certification. No, that's not the rule. And that'd be impractical. And we can talk about why that'd be impractical. It may be impractical. I fear the Supreme Court's headed there, but it hasn't gotten there yet. And neither is this circuit. So let's assume that's the laws as you describe it. So let's address predominance. So yes. And the second way they attack it is predominance. And contrary to Fred Meyer's explanations up here, if we look at the district court opinion directly, a direct predominance, because that what it was supposed to do, and that was plaintiff's burden. So they raised the issue of these, these refunds, which by the way was, and we'll hopefully talk about it later, was raised not until their opposition to class certification. Plaintiff had no idea. Fred Meyer argues that, well, you didn't, you didn't allege the loss of time value as a subset of the injuries for these supposedly refunded class members. But we didn't know about any supposedly uninjured class members. I didn't understand that in the record. It seems to me, I thought they had denied and said, you don't have a weight. And then, and that, the 1275 came out. Was there, was there an explanation that I missed in this record about where that came from? No, there, there is. I think you kind of nailed it on the head originally. Okay. So originally in a, where this all comes from is from a response to an interrogatory question. That was a sort of late in the class certification stage. I don't mean to dig into the weeds. I'm just, I get that there was a discrepancy. I'm trying to We still have no answers. And I think this goes, this, you know, partly goes to the fact of why, you know, proving absent class member standing is nearly impossible or impractical to do at the class certification, especially because of the standard of class certification. But getting back to predominance, sorry, Your Honor. Just before you leave this, because I think it might be important when we get to predominance, on the 1200, I think it's 1275 refunds. I think that's the I Can Make It Right program, right? There's, there's, that wasn't a trick question. There's two. There's some generic, I think there's some other generic Fred Meyer program, both of which by 2018 were not communicated outward facing. Here's my question, counsel. I think the answer that what we have on the record is 1275 refunds for this kind of orange juice, right? Of some amount. Some of those were full and some partial, is my understanding. And we don't know why those refunds were given when they were given, is that right? I think that that's correct. And going back to, I think, your beginning point and why this is contested is originally, suppose it was impossible to know if any of the refunds were given for those specific products or had a bottle deposit, and then suddenly we get this bold response to a, to an interrogatory, which then Fred Meyer uses to say, to try to defeat class certification. I'm not assuming bad faith. I'm just trying to figure out if we know what those are and whether or not this is going to be a predominance problem. So it sounds like we're not, we don't know how many of those are full or partial refunds. Is that right? Correct. All right. Go ahead. And you were talking about predominance. And so if I can, getting back to Judge Hurwitz, were you going to say something I was going to get back to predominance? I'm still stuck on predominance. I'm not suggesting how I come out on it. I just need your help on this. If I were Fred Meyer, I would say, all right, we're going to have a class that includes some people, given my assumption about time value of money, that are not entitled to relief. And it's $200 a person, as I take it, your argument. I'd like to show they're not entitled to relief. How do I do that? As to the absent class members who may have received refunds? Yeah. I mean, you're saying as long as they make a claim, they're entitled to a refund? So, and I think this is common. So the jury will decide liability on the elements of the UTPA claim. And what we know from Healy is that the jury, or if defendant raises at summary judgment, absent class member standing, attacking, for example, these people that could have then plaintiff will come forward with evidence, the evidence that we have already outlined, right? Now isn't it your burden? So you get to liability, your class is certified. You get to the liability stage and Joe Blow comes in and says, I bought one of these and I never got a refund. The, I take it Fred Meyer's entitled at that stage to cross-examine it. Correct? Correct. And I think that's why we cite. Now there's 8,000 of those people. Why doesn't that defeat predominance? Because, because your honor, that, that issue of, of let's say lost time value of money, that's going to be dealt with. If Fred Meyer. You got the lowest time value of money. I've asked you to put it aside. Okay. Just as somebody who says, I didn't get a refund. I want my, and therefore I'm entitled to a $200 penalty. And Fred Meyer says, prove you didn't get a refund. Right. And he gets up and says, I didn't get a refund. And they say, well, let me cross-examine about that. Right. Sorry. No, let me finish. So I'm envisioning at least a proceeding in which there are hundreds of determinations about whether somebody got a refund or didn't. Why doesn't that defeat predominance? Outside again of the, of the, which I'd like to discuss outside of the lost market value, which I do think the district court did rule on in Van and that. Let's assume. Okay. I mean, again, I've asked you to assume it away. You have five minutes left. You can address it. Okay. Yes. Deal with the question I asked. Yes. Outside of that process that, so the jury, this hypothetical, the jury, the jury determines liability. Right. Against Fred Meyer, like in all such cases, we say to present, there'll be a claims process. We already filed a notice that got stayed because of this pending appeal to give notice to the class. We, a professional claims administrator, like they say in Briseno, then people will have to submit claims. There's a portion of people that we think we can track through Fred Meyer's reward program that may have not received refunds, but also were, were injured through that process that we can identify. But there's going to be a big portion of the class members aren't identifiable. That's through the claims process. And as, as this court said in Briseno, that's an opportunity in due process, Your Honor, for defendant to, to say, well, look, they submit claims. There's an affidavit here saying that they purchased this product and that they did not receive a refund. And then that process is in which defendant can challenge those claim forms. And actually the whole process of designing the claim form itself through the, well, defendant can participate in. It won't be the court doing that and having thousands of mini trials. This happens. Counsel, over here. How does that not shift the burden over to the defendant to disprove the claims through the claim processing? Judges, if you could, I'm not quite. How does what you've just described not shift the burden over to the defendant, which is when, when it is your burden to be able to establish each of the people who are seeking payment through the claims processing process, it's your burden to be able to show that each and every one of those people are entitled to payment. How does what you're describing not shift the burden? Because, Your Honor, that will be decided in the liability by the jury. So the jury doesn't decide which class members are getting it. The jury is going to decide liability. And frankly, like it would any damages, this issue, as Healy says, could be issue of fact that also has to be resolved by the jury in terms of, in terms of the lost time value, for example. And so the jury determines liability on plaintiff's class-wide UTPA claim. And then, then it goes to the claims process for people to, to opt out and or to submit an affidavit that says, I purchased this product. I'm one of the injured class members. And then there's a post-judgment phase where the court then, and just like the court said in TransUnion, that's important because everyone has to have standing in order to get damages, right? And so that, that process is then to go back. There won't be any judgment that Fred Meyer has to pay X amount of, of class members or dollars until that claims process happens. I think what you're not grappling with is that the, the, there are times when this kind of, of argument is made and it's going to take a, a, a very involved inquiry. I mean, those cases are cited in this briefing. Cases where we have to figure out, courts had to figure out what was the pre-crash value of a used car and that became too burdensome. And it falls apart at that. There are certainly cases where the analysis falls apart at the predominant stage. And what seems to me to you, unique about this case is that it's a 10 cent on off switch. I mean, it's, it's, it's, it's a liquid of damages essentially, and people either incurred it or didn't. And if that's the question, it seems to me that we encounter that in every consumer class action. Correct, Your Honor. And so... Are you relying on Brisenio? Is that the answer to Judge DeSantis? I think that Brisenio answers a lot of the questions. Because I think, and the case is cited within Brisenio, I should say, because the Brisenio court spent a lot of time talking about, you know, this process, although in the context of, you know, arguments about ascertainability of the class members, not, and, and these type of low value consumer class actions where people don't keep receipts, et cetera, that's a necessary process, that claims process is an opt-in is necessary. Why doesn't Van defeat your case, supposing counsel relies heavily on Van too? And thanks for asking, Your Honor, because I think much like Healy, it's the opposite. And the district courts spent much efforts in its predominant section, going back to Judge Hurwitz' section, if we look at it, in the, in the 23b-3, saying exactly why and talking about Van and distinguishing Van, and that was because Fred Meyer, you know, filed a supplemental notice when, after Van too, after this court ruled, and it went back to the district court, and then the district court took the, this court's notice, and then the defendant submitted a bunch more information and said, and, and decertified, essentially, or which were their, the district court, which you're seeing. The key differences here, and we talk about the point of sale, the district court didn't err by saying that the, the injuries were occurred at the point of sale. That $0.10 was incurred by everybody, every class member, even the ones that potentially received refunds at that time of sale. I think that's why Judge Hurwitz is asking you, I think, very correctly, that we have to assume that some people weren't injured here. I mean, that's the rub. We have to assume that some people weren't injured, which is why, at the top of the analysis, I think we go to, this bakes into a predominance inquiry. And, and, and your best answer to Van not unraveling your class certification effort is, is, is, it doesn't at all. It's actually, it says why that predominance is met here, and we look at the district court opinion, we look at Van, what happened in Van? Everybody in Van, every single class member in Van, including the plaintiff, had already been refunded at the, for the phantom Alaskan sales tax in that case. So, all of the injury in that case was lost time value of money. And this Court said, even a fraction of a cent qualifies for that. And what happened was, when the evidence, the, the district court didn't properly look at the evidence, this Court said, that said, well, some members, not because they were refunded, they were all refunded for that tax, but because there was two different types of remuneration that happened at the point of sale. And your Honor knows this, I know I'm talking, it's your case. I know, but I haven't heard anybody correctly. I wonder if either one of you read Van. That's what I'm wondering. Oh, I've read it many times, Your Honor. Okay, so here's the difference in Van, so you have an opportunity to respond. There were several things going on, a lot of cross-currents in Van. The first is that, it's only 18, correct? But there's a, there's an exhibit in, in, in that case that the district court simply overlooked. He thought there were two. And we said, no, there's, you have to, that's, that's clearly a runniness, you have to have overlooked that exhibit. That's the first thing that happened. The second is that there were refunds given in that case for a lot of different reasons. And the third is that there were plaintiffs in that case who had been apprised of the problem, that the computer was inappropriately collecting sales tax, and they went forward with the transaction anyway, suggesting that they, they, they weren't dissuaded. They didn't, they didn't have an article three injury on those transactions. So there was lots going on, and the opposing counsel acknowledged, and I appreciate that what we did there was remand for the, for the inquiry. Anyway, so now I've read Vann, and, and at least I told you what I have taken out of it, and I think it's important, I think it is the case that you need to grapple with, and I've taken you over your time. But let me just check with my colleagues. Is there anything further? All right, counsel, do you want to wrap up, please? Yes, and so I just want to leap right back into it. And, and we put it in the brief, and I think, and maybe not as clearly as we could, because rereading the district court's opinion and, and the sort of third reason, if we look at it, under its predominance analysis and discussing Vann, it, it does distinguish, and those distinctions are important. Because at the point of sale, all, all these coupons or whatever were received at the point of sale, some, the court said, coming back on remand, that the ones, and even the Ninth Circuit, this court said, that at the time of sale, if they received something that compensated them at the time of sale for the lost time value of money, then they, then they wouldn't have standing. But there was another subset of class members who didn't receive it. Counsel, this is supposed to be a wrap-up. It's not, this is supposed to be a wrap-up, because you're three and a half minutes over your time. In any event, and here, there's, as we point, there's no evidence that any class member, even those that received refunds, could have received any compensation for the lost time value of money, even if they received the purchase price of the product, that was a refund for the product, and the 10 cents, not the lost time value of money. Thank you. Thank you for your argument. I'm going to stop you there, because we've taken you significantly over time. Counsel, could you come back up? Madam Clerk, would you please put two minutes on the clock for counsel? Thank you, Your Honor. So, counsel's response on the predominance issue was Bresenio in the claims process. That doesn't work anymore after Healy and TransUnion. So, both of those cases made clear that standing is something that has to be determined at trial. It can't be determined subsequently, the claims process. And I didn't see any, I didn't hear any answer. I haven't seen anything in the record that would show how this could be determined at trial. So, I think to answer Judge Horowitz's questions, how would this play out? The way I imagine it would play out is that we would put in evidence showing that more than 1,000 refunds were provided for varying amounts of money, and then it would then be plaintiff's burden to show that each individual class member, in fact, both paid the 10 cent deposit and did not receive a refund, because that's what they would need to show to show that they had standing at the time of suit. And I'm not aware of any— Why would that defeat predominance? So, let's assume it proceeds that way, and they bring in a bunch of affidavits from people that said, I never got a refund. I believe they'd have to bring in an affidavit from every single class member, and then we'd— No, no. Only from the class members that they seek damages for. But they seek damages— And they say, to the extent I don't have such an affidavit, we don't get damages. Well, Your Honor, they— I mean, it strikes me as a perfect— It can happen at trial. It strikes me as a perfectly manageable process. Well, Your Honor, if essentially the— Then every class member— There would essentially be no unnamed class members, just a small subset of the class would appear at trial? I'm asking you to assume that we get past your Article III arguments, which— And now we're at trial, and it's their burden to show at trial that every class— that a class member suffered damages. And they can't show it as to some number of people because they don't have affidavits or other proof that they suffered damage. Okay, those people are now excluded, or now don't get a recovery. But I don't understand why that's unmanageable. Or why that defeats predominance. Well, the issue— So even if we're talking about now just a subset of the class, say they put in an affidavit at trial saying, I paid a deposit, I didn't get a refund, Fred Meyer's still entitled to challenge that. We're still entitled to call them to the stand and challenge that. Because this is a trial. This is not— this can't be left to the claims process. So we have the— So I think the question that Judge Hurwitz is asking, I have a similar question, which is, let's say we agree with you on that point, that this has to be done at the trial or summary judgment stage and not at some point later through the claims process. Right. Why does that require us to rule in your favor on the predominance issue? Because, Your Honor, the plaintiffs haven't put in any evidence to show that this could be done in any sort of manageable way at trial. Because, again, it would boil down to individual testimony by each individual class member. I haven't heard you respond. On this point, if you could, bake in. I haven't heard you respond to the observation that I think your argument would wipe out every consumer class action case. No, Your Honor, that's not the case. I think the— Why not? Why not? Because there are many cases in which a refund wasn't provided. And so that's one. There may be cases in which a class can be defined in a way that would not contain members who lack Article III standing. Or there might be ways in which a plaintiff can put forward evidence showing that there will be a viable way at trial to distinguish between those class members who are injured and those who are not. The issue here is that what we know is that lots of class members aren't injured, but we don't know which ones. We don't have a viable way to determine which ones are injured and which ones are not. It does sort of circle back inevitably to the position your client first took, but they couldn't tell about these refunds at all. And then they came up with this number, but we don't know where. And opposing counsel is saying we think that we may be able to identify those people through the records. So, yeah, that is difficult for you. You're just about out of time. But hang on. Do you have something on this point, Judge Hurwitz? Yeah, there's a broad class definition here of anybody who purchased during a period. What if the class were redefined to be anybody who purchased during a period and did not receive a refund? Would you be making the same arguments? No, Your Honor. We'd likely make different arguments. The defense haven't proposed that classification. I think that's something. No, I understand. But we have some power. And so I guess I'm asking, what if we told the district court to redefine the class as those who did not receive refunds? We wouldn't be making the same arguments. We'd be making different arguments, including fail-safe class arguments. So this was dealt with in a footnote in a lien, essentially saying in some circumstances And you would still be making your standing argument? Oh, well, depending on how the class is defined, we might still be making our standing argument. Yes, Your Honor. It would really depend. But again, that's not an issue that was litigated below. And it's sort of tough for me to say in the abstract how that would play out. Fair enough. Do you want to make closing? One closing remark is that the counsel said that, oh, the district court distinguished Vann. The basis on which the district court distinguished Vann was that every class member here had Article III standing. That's what it held. Because that's wrong as a matter of law. That alone is enough to reverse and remand, let it do the predominance inquiry, which we submit they can't possibly satisfy, but at least should be up to the district court to determine that. Thank you, Your Honor. Thank you for your spirited advocacy, both of you. It's helpful. And we appreciate it. I'm going to take that case under advisement and stand in recess. All rise.
judges: CHRISTEN, HURWITZ, DESAI